Chief Justice Robertson
delivered the Opinion of the Court.
Madison C. Johnson having failed — on application by commissioner — to “ fix, on oath,” a sum sufficient to cover what he was then worth, independently of such property as was subject to be taxed prior to 1837, and such as was exempted by the statute of that year, entitled “an act to equalize taxation, (Session Acts of 1737, page 313,) he was summoned by the County Court of *339 Fayette, to shew cause why he should not be “fined and treble taxed.”
Questions in this court.
The act of 1837, ‘to equalize taxation/was in no part repealed by the act of 1838, which repeals the preexisting laws requiring the value of each article of taxable pro perty to be reported to the commissioner,on oath. The former act is still in full force, and requires that every person giving in a list, shall fix, on oath, a sum sufficient to cover what he or she is worth, exclusive of the other items listed., $'300, land &c. taxed elsewhere, and a few other items: ‘upon which the same tax shall be paid, and the same proceedings, in all respects, had, as upon other property subject to ad valorem tax/ And the listing of that item, and the payment of the tax upon it, may bo enforced in the same modes, as the listing and collecting of taxes upon other articles of taxable property may be enforced. And county courts may compel the listing of a sum for what a person is worth, exclusive &c. as required by the act of 1837 ; and, for a failure, may impose a treble tax and fine. Vide post, as to the fine.
On appearing in the County Court, he was required (notwithstanding his objections thereto,) to disclose, on oath, what, in his own opinion, he was then worth, subject to taxation under the said act of 1837. And, upon making the required disclosure, the Court imposed on him a fine of twenty dollars, and a treble tax on the value of the estate thus reported by himself.
That procedure is now to be revised; and presents for our consideration, the following questions:—
1. Is the act of 1837 (supra,) enforcible, and how?
2. Had the County Court authority to compel Johnson to be a witness against himself?
3. Had the Court power to fine him twenty dollars?
4. Is his stock in the Northern Bank of Kentucky subject to taxation, under the act of 1837? and what property is thus subject?
First. The act of 1837 is in these words:—
“An act to equalize taxation.
“J3e it enacted by the General Assembly of the Commonwealth of Kentucky, That all persons, from and after the tenth day of January, eighteen hundred and thirty eight, when giving in their lists of taxable property, shall be and they are hereby required to fix, on oath, a sum sufficient to cover what they shall be respectively worth, from all sources, on the day to which said lists relate, exclusive of the property required by law to be listed for taxation, (not computing therein the first three hundred dollars in value, nor lands not within this State, nor other property out of this State, subject to taxation by the laws of the country where situated,) upon which the same tax shall be paid, and the same proceedings in all respects had, as upon other property subject to the ad valorem tax: Provided, That nothing herein contained *340 shall be so construed as to include the growing crop on land listed for taxation, or one year’s crop then on hand, or articles manufactured in the family for family consumption.
Aípeoved, February 23, 1837.”
An antecedent act of the same session (page 268,) had made it the duty of the commissioner to report to the County Court the name of every person who should fail or refuse to give in his or her list of taxable pro- , perty, “ or to add thereto the value of each article of “ taxable property, as required by-law,” and also provided, that every person who should fail or refuse to add to his or her list of taxable property, “ the value of each “ article thereof, as provided for by the existing law,” should be subject to a fine and treble tax, “as in cases “ of failure or refusal to list property for taxation.”
And a subsequent act of 1838, (Session Acts of 1838, page 68,) repeals so much of all previous acts as required “persons giving in their lists of taxable property to add “ to his or her list, on oath, the value of the taxable property therein containedand requires the commissioner to assess the value of all property listed by him for taxation; and if any property, subject to taxation, can not be “conveniently seen” by him, authorizes him to require from the owner such- a description as may enable him to fix the taxable value thereof.
The act of 1838 does not, in our opinion, apply to the oath required by the act of 1837 “to equalize taxation;” it only repeals so much of other acts as required the owners of taxable property, when they listed the several articles thereof, to fix, on oath, the value of each separate article listed.
The whole of the act, “to equalize taxation,” is still in full force.
Then what is its effect, and how may it be enforced?
It certainly requires a disclosure on oath of the total value of property, (with some exceptions,) which is not subject to be listed or taxed specifically.
And though it does not contain any express and explicit sanction, we cannot doubt that it was intended to *341 be enforcible by the sanctions provided for enforcing the duty of listing, according to law, specific property an-tecedently subjected to taxation. “ Upon which the “ same tax shall be paid and the same proceedings, in all « respects, had, as upon other property subject to the ad « valorem tax” — was, we think, intended to provide that, upon what a person is worth, as embraced by the act, when ascertained as required by it, the same tax should be paid; and upon, or (more explicitly) in reference to, what a person is worth, independently of property specifically taxed, there might be, in all respects, the same proceedings for securing the listing of the value of it, and for enforcing the collection of the tax on that value, as had been prescribed in respect to property specifically subject to be listed and taxed.
To ascertain the taxation^by6 üie act of ’37, and collect the tax merely, the county court may coerce a disclosure on oath, from any one who has failed or refused to list it with the commissioner. But no penalty — no treble tax and fine, can be assessed upon such forced disclosure; for no one ‘can be compelled’ in a criminal prosecution — and this is of that nature — ‘to give evidence against himself.’ Con.
And although the property, embraced by this act of 1837, is not within the purview of the antecedent act of the same session, (page 68) nor within that of 1838— yet the value of the property required to be disclosed to the commissioner, by the act “ to equalize taxation,” is thus made by law an item to be listed, and, when entered by the commissioner, is an item in the taxable list; and that item is of course embraced by the law which denounces a fine and treble tax for failing to “give in” a correct list; and the act “to equalize taxation” authorizes the same proceedings for coercing the listing of it, as have been prescribed for enforcing the listing of specific articles of property.
We are, therefore, of the opinion that, if any person shall fail or refuse to comply with the requisitions of the act “ to equalize taxation,” the County Court may, as in other cases of the like delinquency, compel him to list the value of his estate embraced by that act; and may, also, impose on him a fine and treble tax for failing or refusing to list the value of it, with the commissioner, on oath.
Second. But we are of the opinion that — though the County Court might have compelled 'Johnson to make *342 disclosure on oath for the purpose of subjecting his undisclosed property to tax under the act of 1837 — yet they had no power to compel him to make any disclosure on oath in a proceeding instituted and carried on for the purpose of punishing him for delinquency, by fine and treble tax. Such a proceeding is of the nature of a criminal prosecution; and, in such a case, the constitution declares that no person shall be required to give evidence against himself.
For failing to list property for taxation, there is no other fine than $5.
The act incorporating theNorth-ernBank ofKen. requires the payment, by the corporation, to the State, of a ionus or tax, of 25 cts. por ann. on each share of stock, (#100;) which may be increased, to not exceeding 50 cents, or diminished_ [The charters of the Bank ofKen. and the Louisville Bank of K. contain similar-provisions.) This is a contract between the State & the stockholders, which exempts the stock from any other taxation, and pre vents the act of ’37, to equalize taxation from ap plying to the stock.
Third. Nor have we been able to find any authority for a fine as large as that of twenty dollars. The fine denounced by statute, is the only one which can be legally adjudged. The seventh section of an act of 1820 (4 LitteWs Laws, 160,) fixes the fine at five dollars, for failing to list property for taxation; and we have not found any subsequent enactment, either repealing that provision, or increasing the fine which it prescribed.
Fourth. Nor do we believe that Johnson’s stock in the Northern Bank is subject to be taxed in virtue of the act of 1837. That act would embrace it, if the Legislature had the power to tax individual stockholders. But, in our opinion, there was no such power; and therefore, we would not presume that the act of 1837 was intended to embrace it; but, if it did, it is so far inoperative.
The fifteenth section of the charter of the “Northern Bank” (Session Acts of 1834, page 173,) is as follows: — -
“ That it shall be the duty of the cashier of the prin- “ cipal bank, on the first day of July, 1836, and on the “ first day of July in each succeeding year during the “ continuance of this charter, to pay to the treasury of “ this Commonwealth, twenty five cents on each one “ hundred dollars of stock held and paid for in said bank, “which shall be in full of all tax or bonus: Provided, “ That the Legislature may increase or diminish the “ same; but at no time shall the tax exceed fifty cents “ on each one hundred dollars of stock paid for in said “ bank.”
The bonus of twenty five cents on each share of stock, to be paid by the corporation, and the reserved right to increase that tax on the corporation to fifty cents on each share, were, we think, understood and intended to *343 be a limitation on the legislative power to tax the stock. This was a contract between the stockholders and the State; and so far as it was intended to operate, it is inviolable.
Bonds, notes, & debts, due from-resident or nonresident debtors, are within the scope of the act; unless they are incident to an es tablishment, or to property, in another State, or business carried on abroad — and as to such,, query-
The power to augment the tax to as much as fifty cents, is a power to tax the corporation only; whereby all stockholders, non-resident as well as resident, would be subjected to an equal burthen. There is no power, reserved or resulting, to tax an individual stockholder, though he may reside within this Commonwealth. Such a tax would be unequal, and therefore unjust; and the power to impose it would be inconsistent with the object of the fifteenth section of the charter: which was to secure the stockholders against the consequences of unlimited and capricious taxation of their bank stock.
But we are of the opinion that bonds, notes and debts to which a resident of this State is entitled — whether on resident or non-resident debtors — are subject to the provisions of the act to equalize taxation — unless such debts be incident to an establishment or to property in another State, or to business carried on in such foreign State; as to the liability of which, we will not now express a definitive opinion, because no such question is involved in the case now before us.
Wherefore, it seems to the Court that the County Court erred — first, in compelling Johnson to be a witness against himself; secondly, in fining him twenty dollars; thirdly, in assessing a treble tax on his bank stock; and in assessing any treble tax on his own extorted evidence.
And, therefore, the judgment of the County Court is reversed, and the cause remanded.