The State v. Branin.

thirty days, in conformity with the first section of the supplement to the practice act, approved March 17th, 1852. The declaration had annexed thereto a schedule and affidavit, pursuant to the third section of said supplement, which affidavit was made July 17th. An affidavit of the service of the notice to plead having been filed, judgment for the amount claimed in the schedule was entered September 3d, and execution issued.

Application was now made on behalf of defendants to open the judgment and allow them to plead.

THE STATE (B. FISH, PROSECUTOR,) v. BRANIN, COLLECTOR.

1. When an incorporated company is, by its charter, exempt from taxation, the stock of the company in the hands of the stockholders cannot be taxed : it represents, and is the title to the property of the company, and therefore is included in the exemption of the charter.

2. The bonds of an incorporated company, which by its charter is exempt from taxation, are not in the hands of individual bondholders, creditors of the corporation, exempt from taxation, whether such bondholders are also stockholders or not.

3. The stock of incorporated banks, although the bank pays a tax on its capital, may be taxed in the hands of stockholders, if authorized by the leg-

islature, although it is a second tax upon the same property. Double taxation may be unequal, oppressive, and unjust, but it is not prohibited by any constitutional provision, and it is in the discretion of the legislature; and courts cannot declare void a statute within the constitutional power of the legislature because its operation may appear unjust or oppressive.

4. Residents of this state are liable to be taxed on the value of stock owned by them in corporations out of this state. The tax law of 1851 taxes only chattels within the state, but it taxes residents for debts due to them from nonresidents and stocks in foreign corporations: this is the intention and the construction of the act, and the legislature has power to impose such a tax.

5. In assessing taxes for county and township purposes and for city purposes in the city of Trenton at the same time, it is error that only one poll tax is assessed; a separate poll tax must be assessed in the city taxes. This is an error that the court cannot correct, but for it must set aside the whole assessment.

6. The provisions of a city charter, it being a municipal corporation, may be repealed or altered by the legislature at will; but a general statute repealing all acts contrary to its provisions will not be held to repeal a clause in any municipal corporation upon the same subject matter.

This was a *certiorari*, prosecuted by Benjamin Fish, in the name of the state, directed to William C. Branin, collector of the first ward in the city of Trenton, to bring up the assessment of taxes made in that ward against the prosecutor in 1851.

The questions arising in the cause were argued upon the following state of the case, agreed upon by the counsel.

A rule for affidavits having been taken in the above case, it is agreed between the parties, respectively, that in lieu of affidavits, the following facts be submitted to the Supreme Court, for its opinion, and that judgment be rendered thereupon, as a state of the case mutually agreed upon by the attorneys of the respective parties.

1. That in the assessment of tax against the said Benjamin Fish, a resident of the said first ward of the city of Trenton, for the year 1851, there was included 213 shares of Delaware and Raritan Canal and Camden and Amboy Railroad stock, valued at $133 per share, making $28,329.

2. That the several other items of property named in Exhibit No. 1, on the part of the plaintiff, were likewise included in said assessment.

3. That the said Benjamin Fish protested against the right of the said assessor to assess said Delaware and Raritan Canal and Camden and Amboy Railroad stock, and appeared before

the commissioners of appeal in and for the city of Trenton, and filed with said commissioners, on the 21st of July, 1851, an affidavit, of which Exhibit No. 2 is a copy.

That after argument before said commissioners, they adjudged that the said several items of property were legally taxable, and refused to reduce said assessment.

4. That the common council of the city of Trenton, by ordinance, directed the sum of —— dollars to be raised, by way of tax, for the year 1851, in which was included —— dollars for losses on collection; that the assessment made by the board of assessors was on a basis of taxation equal to —— dollars, being a larger amount, with a view to greater convenience in fixing the per centum of assessment or rate of tax to be levied and collected.

5. That although a school and other taxes were assessed and levied in said city of Trenton for the year 1851, no poll or capitation tax was so assessed or levied for the use of said city.

6. That Exhibit No. 3, on part of the complainant, is a copy of the assessor's duplicate, so far as regards the tax of the said Benjamin Fish for the year 1851, and that the same is upon the aggregate value of said estate, as rendered in Exhibit No. 1, deducting debts, &c.

It is further agreed that the parties mutually may refer, upon the argument of the above *certiorari*, to all acts of the legislature, ordinances of the city, reports, &c., which would be competent if in evidence and marked as exhibits in the cause.

*Exhibit No.* 2.—Benjamin Fish, resident of said ward, appeals from the assessment for the current year, made by the said Tucker, assessor as aforesaid, against him, and, for objection thereto, assigns the following reasons, to wit:

That he is unjustly and illegally assessed in said ward.

1. For 213 shares of Delaware and Raritan Canal and Camden and Amboy Railroad stock, valued $133 per share, said stock being, by its charter, exempt from such taxation,                                              $28,329
2. For bonds of said company, exempt in like manner, &c.,                                                                    5,317

3. For 80 shares of Trenton Bank stock, at $35 per
share, which already pays a tax ($\frac{1}{2}$ of 1 per cent.), $2,800
For 10 shares of Mechanics and Manufacturers Bank,
paying a like tax, 250
4. For 20 shares of the Mechanics Bank of New
York, which is extra-territorial, and without the
taxing power of the state, 500
5. For 24 shares of Philadelphia and Trenton Rail-
road stock, which is likewise extra-territorial, and
without the taxing power of this state, valued at
$123, 3,120

And the said Benjamin Fish, appellant as aforesaid, prays
of the said commissioners of appeal that they will reduce the
amount of his assessment, by deductions from the aggregate
of his property assessed in said ward, the amount of the above
items, or such portions thereof as may be legal and just.—
Benj. Fish.

New Jersey, Mercer county, ss.—Benjamin Fish, being duly
sworn according to law, saith, that the several items above
named are embraced in the aggregate of taxable property as-
sessed against him by said John Tucker, assessor of said first
ward of the city of Trenton aforesaid.—Benj. Fish.

Sworn and subscribed, this 21st July, 1851, before us, com-
missioners, &c.—Bailey A. West, Job M. Bennett, Com'rs.

*Exhibit No. 1.*—Amount of Benjamin Fish's property, as
returned to the assessor in the first ward in Trenton, May 17,
1851.

For my real estate, $11,500
Bonds, mortgages, and notes of hand 14,019
Sundry book debts, 7,684
Horses and carriages, &c., 750
In different stocks, say—
80 shares Trenton Bank, at $35, $2800
10 " Mechanics and Man. Bank, $25, 250
80 " Trenton Water Power Co., $20, 1600
6 " New Brunswick Canal Co., 2000
5 " Trenton Water Co., 250
5 " T. D. Manufacturing Co., 500

The State v. Branin.

| | | | | | |
|---|---|---|---|---|---|
| 10 shares | Trenton Gas Co., | | $200 | | |
| 1 | " | Commercial Transportation Co., | 500 | | |
| 10 | " | Trenton Delaware Bridge Co., | 400 | | |
| 2 | " | Camden Philadelphia Ferry Co., | 50 | | |
| 20 | " | Burlington and Mt. Holly R. R. Co., | 400 | | |
| | | | | | $8,950 |
| 20 | " | Mechanics Bank, New York, | | | 500 |
| 24 | " | Philadelphia and Trenton R. R., | $130, | | 3,120 |
| 213 | " | Camden and Amboy R. R. Co., | $133, | | 28,329 |
| Furniture, &c., | | | | | 2,500 |

|  |  |
|---|---|
| | $77,352 |
| Deduct debts, | 27,352 |
| | $50,000 |

I returned to the assessor the fifty thousand dollars, claiming an allowance for my Camden and Amboy and Delaware and Raritan Canal Company stock. If allowed to me, I will pay the tax on the balance.—Trenton, July 21, 1851.—Benj. Fish.

| | |
|---|---|
| Amount returned, | $50,000 |
| Deduct Camden and Amboy Railroad | 28,329 |
| | $21,671 |
| I also pay in fourth ward on | 11,200 |

The case was argued before the CHIEF JUSTICE, and ELMER and POTTS, Justices, by *Wurts* and *Dayton*, for plaintiff, and *Vroom*, for defendant

*Wurts*, for plaintiff.

I. As to the tax on the stock of the joint companies, the matter is settled and at rest, if the doctrine of *stare decisis* is to govern the court.

The companies are exempted from taxation by express provisions in their charters. 2 *Harr. Comp.* 292, § 23 ; *Railroad charter, Ib.* 304, § 26 ; *Canal Charter.*

2. Any law authorizing a tax in violation of this contract is unconstitutional and void. 6 *Cranch.* 88, *Fletcher* v. *Peck ;* 9 *Ib.* 43, *Terret,* v. *Taylor ;* 7 *Ib.* 164, *New Jersey* v. *Wilson ;* 4 *Wheat.* 518, *Dartmouth College* v. *Woodward ;* 8 *Wheat.*

The State v. Branin.

1, *Green* v. *Biddle;* 4 *Peters* 514, *Providence Bank* v. *Billings.*

3. If it is said that this tax is against Fish individually, and not against the company, and that as the contract is that no other tax shall be imposed upon the company, then the provision is illusory and fraudulent. The state do in substance the very thing they contracted not to do, by changing the form of levying; but the tax falls upon the same persons that compose the company, the stockholders.

4. The effect of such provision in protecting the property of the company from tax has been repeatedly decided in New Jersey. 2 *Harr.* 80, *State* v. *Berry;* 3 *Harr.* 11, *Camden and Amboy Co.* v. *Hillegas;* Ib. 71, *Same* v. *Commissioners;* 1 *Zab.* 557, *Gardner* v. *State.*

II. As to the tax on the stock of the Philadelphia and Trenton Railroad Company, it is property out of the state, and it is not in the power of the legislature to tax it. Government cannot tax real or personal property without its territorial limits. 1 *Kent's Com.* 425; 4 *Wheat.* 316, 428–9, *McCulloch* v. *Mayor,* &c.

III. Same principle applies to the stock in banks out of the state.

IV. The bonds of the company represent their capital expended in their works, as much as their stock certificates do.

Upon right of state to impose a double tax, counsel referred to *A. & A.* 261–2; 8 *N. Hamp.* 207; 8 *Barn. & Cress.* 54, *The King* v. *Gas Co.; Wadsworth Joint Stock Co.* 104–5; 7 *Cranch* 164; 3 *Howard* 133.

*Vroom,* for defendant.

1. The stock of the joint companies is the private personal property of Fish, and, as stock in a corporation, it is expressly directed to be assessed by tax act of 1851. It is liable, like all other property, to taxation, unless on his part he can show positive exemption. 4 *Peters* 563, *Providence Bank* v. *Billings.*

Is there any exemption in the charters of the companies? My own view was that it was not intended by the exemption

clause in these charters to exempt the *property* of the companies from such taxes as all other property in New Jersey was made subject to, but only that no special tax should be laid upon them, as a company, in the nature of a poll tax, a tax upon their franchises. I am aware that it has been held that certain property of the companies is exempt from tax.

But *this stock* is not the property of the company ; it is Fish's private property, and may be levied on and sold for his debt. In taxing *this stock* the company is not taxed : neither the company or any other member besides Fish will be any loser by this assessment being affirmed.

This is not, as said by counsel, a settled question. The cases in 3 *Harr.* 11 and 71, and 1 *Zab.* 557, are all cases of taxes on real estate held by companies. These companies have millions invested in subscription to other railroad stocks. *A. & A.* 427, *ch.* 13, 429–30–31.

There is no principle of law, and no constitutional provision in this state, against double taxation ; the only remedy against this wrong is with the legislature.

2. As to the Philadelphia and Trenton Railroad stock, this is plainly personal property, and, like all other personal rights, it is located and taxable where the owner resides.

In Pennsylvania they tax stock in bridges over the Delaware, which are chartered by both states. 9 *Barr.* 415, *Easton Bridge* v. *Northampton.*

3. As to the bank stocks, the right of the legislature to tax the banks was contested and settled in favor of the power, and has been at rest for years : there is no obstacle in the bank charter or in the state constitution to prevent their being taxed double.

4. That the railroad bonds are the mere private property of Fish, is a question too clear for argument, and therefore they are taxable if all property of company exempt.

*Dayton,* for plaintiff, in reply.

It is not intended to argue what the legislature intended to exempt from taxation by the clauses in these charters. Not a single judge has ever hesitated to hold that it is the property

of the corporation. The New Jersey decisions were not even questioned in *Gordon* v. *Appeal Tax Court*, 3 *How.* 133. And other states have gone beyond us. 4 *Metc.* 564 ; 6 *Barr.* 70 ; 8 *Ser. & Watts* 334 ; 7 *Dana* 342.

Taxation is taking private property for public use upon just compensation : that compensation is the protection of the government which is supported by the taxes. *Vattel* 112, 113.

A stockholder in a company is a mere shareholder of the property of the company ; his certificate is as good a title paper to his proportion of the corporate property as a transfer of an undivided share or interest in a horse or farm would be to that share.

The power of the legislature to make double taxation is not disputed, but we insist that in case of doubt it will be presumed that the legislature did not intend to do it.

In other corporations, the company would have been relieved from their tax to the amount imposed upon stockholders ; but here is a contract between companies and state which neither can avoid. *Ang. & Ames* 261–2 ; 8 *N. Hamp.* 207 ; 5 *Greenl.* 133, *Gardner* v. *Cotton Factory ;* 8 *Barn. & Cress.* 54.

And *Gordon* v. *Tax Appeal Commissioners,* 3 *How.* 133, is admitted to be like the present case.

There are other exceptions arising from provisions in the charter of the city of Trenton, which provides that every city tax shall be levied in the same manner as state tax. This includes a poll tax, and only one poll tax is levied by this assessment for both city and county tax. This mistake throws a larger proportion of the amount raised upon the property of Fish than is lawful.

The charter also provides that land shall be assessed with regard to its rent, which has not been done here.

The provisions of municipal charters are not affected or repealed by general provisions on the same subject. 9 *Humphreys* 217, *Shoalwater* v. *Armstrong.*

The CHIEF JUSTICE. The first exception to the assessment in this case is, that the prosecutor is assessed for 213 shares of Delaware and Raritan Canal and Camden and Amboy Rail-

road stock, at $133 per share. The ground of the exception is, that the stock is not liable to taxation. The property consists of "stocks in corporations," and falls within the description of property made taxable by the act of 1851. It is therefore liable to taxation, unless it be exempt by virtue of some authority which controls the express provision of the statute. This authority, it is alleged, is found in that clause of the charter of each of these companies which exempts the corporation from taxation; and the simple question presented for consideration is, whether the clause in the charter exempting the corporation from taxation operates as an exemption of each stockholder of the company from all taxation upon his individual stock.

It is admitted that the charter operates as a contract between the state and the company, and that any law in violation of that contract is unconstitutional and void. *The State of New Jersey* v. *Wilson*, 7 *Cranch.* 164; *Dartmouth College* v. *Woodward*, 4 *Wheaton* 578.

There is in truth no question, either in regard to the obligation of the contract created by the charter, or the duty of this court to maintain it inviolate. The only question touches the extent of the exemption, and that depends entirely upon the true construction of the contract between the state and the company.

By the 25th section of the charter of the railroad company, under which the exemption is claimed, it is enacted as follows: "That, from and after the completion of the said road or roads, it shall be the duty of the treasurer of the said company, under oath or affirmation, to make quarterly returns of the number of passengers, and the number of tons of goods, wares, and merchandise transported upon the said road or roads, to the treasurer of this state for the time being; and thereupon to pay the said treasurer of the state, at the rate of ten cents for each and every passenger, and the sum of fifteen cents for each and every ton of merchandise so transported thereon; *and that no other tax or impost shall be levied or assessed upon the said company.*" *Harr. Comp.* 292.

The exemption clause in the charter of the canal company is in the same words. *Harr. Comp.* 284, § 26.

The terms of the contract on the part of the state are, that no other tax or impost shall be levied or assessed upon the said company. Does this exemption extend to the interest of the individual stockholders in the property of the company? If this were a new question, I should have some difficulty in arriving at the conclusion that the shares of the individual stockholders were, by virtue of the contract, exempt from taxation, on the grounds that, by the terms of the contract, the exemption is strictly limited to the body corporate; that the property of the individual stockholder is not identical with the property of the corporation, and not within the *terms* of the exemption; that in a public grant nothing passes by implication, the contract in all cases of doubt being taken most strongly in favor of the public and against the grantee, and especially as the fact of giving such construction operates to limit the taxing power of the state.

But this question appears to have been decided in favor of the exemption of the stockholder from taxation, under a similar legislative provision, by the Supreme Court of the United States, in the case of *The United States* v. *The Appeal Tax Court,* 3 *Howard* 133.

It was held, in that case, that an exemption of certain banks from taxation exempted the stockholders of the banks; and although much stress is laid, in the opinion of the court, upon the phraseology of the statutes upon which the question arose, and the peculiar circumstances of the case, there seems to be nothing in reality to distinguish it from the present case. As the question is one of constitutional law, which lies peculiarly within the jurisdiction of that court in the last resort, there is an obvious propriety in adopting their conclusion.

The same view has been taken by the judicial tribunals of several states. *Johnson* v. *The Commonwealth,* 7 *Dana* 342; *Tax Cases,* 12 *Gill. & John.* 117; *Gordon's Executors* v. *The Mayor of Baltimore,* 5 *Gill.* 236; *Smith* v. *Burley,* 9 *New Hamp.* 423.

The legislature of this state, in the act of 1851, appear distinctly to have recognised the principle, that taxation upon the corporation is taxation upon each stockholder; and the le-

gislatures of other states, where the practice of taxing property in action has prevailed, appear to have kept the same principle steadily in view. The principle must therefore be considered as settled, that an exemption of the corporation exempts also the stockholder from taxation upon his individual stock.

Upon the strength of these authorities, I concur in the opinion that this exception must be sustained.

The *second* exception taken to the assessment is, that the prosecutor was assessed for the bonds of the Delaware and Raritan Canal, and of the Camden and Amboy Railroad Companies, owned by him. It is insisted that these, also, are exempt from taxation under the operation of the exemption clause in the charter of the companies, by virtue of which the corporation and its property are relieved from taxation. Indebtedness is not property, nor can the purpose to which the money raised by means of the obligations was applied in any wise affect the question. The bonds, whether in the hands of the stockholders of the company or of any other inhabitant of the state, are liable to taxation against the owners. They are, in the language of the act, "debts due on bond from solvent debtors."

The *third* exception to the assessment is, that the prosecutor was assessed for stocks held by him in incorporated banks within this state. The ground of this objection is, that the entire capital stock of the bank is subjected to a tax of the one half of one per cent., and that to subject the same property to a tax in the hands of the stockholders would be in effect double taxation.

Admitting that the taxation be double, and therefore unequal and unjust, the power of the court to interfere and declare it *illegal*, except in cases where it is also in violation of some provision of the constitution, does not seem to be clear.

The authorities are against the exercise of the power, except where it contravenes some constitutional provision. The legislature, from some cause, have applied a rule of taxation to banks different from that applied to other corporations. In all other cases where the stock in the hands of the stockholder is taxed, the property of the corporation is exempted. This

taxation may, in its operation upon the stockholders in the banks, be unequal, oppressive, and unjust; but, if so, the remedy is not with this court. " The interest, wisdom, and justice of the legislature, and its relations with its constituents, furnish the only security where there is no express contract against unjust and excessive taxation, as well as against unwise legislation generally." *Providence Bank* v. *Billings*, 4 *Peters* 563 ; *McCullough* v. *The State of Maryland*, 4 *Wheat*. 316 ; *Salem Iron Factory* v. *Danvers*, 10 *Mass*. 518 ; *Smith* v. *Burley*, 9 *New Hamp. Rep*. 423.

The *fourth* exception to the assessment is, that the prosecutor is assessed for stock owned by him in the Mechanics Bank of New York and in the Philadelphia and Trenton Railroad Company. The ground of exception is, that the corporations are both extra-territorial, and without the jurisdiction and the taxing power of this state. The property falls directly within the description of property made taxable by the act, *viz*., " stocks in corporations without this state." The second section of the act, in declaring what property shall be taxable, specifies all lands and all personal estate *within this state*. The fourth section enacts, that, " the term *personal estate*, as used in the act, shall be construed to include goods and chattels of every description, including steamboats and other vessels, money, debts due from solvent debtors, whether on contract, note, bond, or mortgage, public stocks and stocks in corporations, whether within or without this state." The phraseology of this section is not very perspicuous or grammatically accurate, but its meaning is sufficiently clear. By the second section, the legislature declares its intention to tax only property, real and personal, *within* this state. By the fourth section, it is declared, that that phrase includes not only all personal chattels and property in action *within* the state, but also chattels *owned within* this state, though *without* its limits, as steamboats or other vessels afloat or in foreign ports, but not permanently used or kept abroad, and therefore not subject to taxation elsewhere ; and also all debts, stocks, and property in action of every description, belonging to an inhabitant of this state, although the debtor reside, or the corporation in which

the stock is held, be located without the state.  One important office of the section is to fix the *situs* or locality of floating property and property in action.  And it declares that, for the purpose of taxation, its locality shall be at the domicil of the owner.  The importance and necessity of this declaration is clearly evinced by the uncertainty respecting the precise locality of this species of property.  The general maxim of the law is, that personal property, of whatever description, has no locality, but follows the domicil of the owner; not that it has no visible locality (which cannot be said of a tangible chattel), but that it is subject to that law which governs the person of the owner.  *Story on Conflict of Laws*, § 380.

But in regard to bonds, stocks, and other property in action, these may be said literally to have no *situs* or locality.  Hence, when the law declared them to be the subject of taxation, it became a matter of necessity to fix their locality for that purpose; and this necessity is strikingly illustrated by questions which have arisen under the English law touching the right of administration.  By that law, where an intestate leaves *bona notabilia* or goods above the value of £5 in different dioceses, the right of granting administration belongs not to the ordinary or diocesan, but, by prerogative, to the metropolitan. And, in settling the claims of these conflicting jurisdictions, it has been held that debt on judgment or recognisance shall be accounted *bona notabilia*, not where the debtor or creditor resides, but where the judgment is rendered or the recognisance acknowledged; debt on specialty where the bond was *made*, or where it *remains* at the death of the intestate, and debt by simple contract where the debtor dwells.  *Daniel* v. *Luker*, *Dyer*, 305, *a. note ;* 11 *Vin. Abr.* 79, " *Executors* " *H. ;* 2 *Bl. Com.* 509.

This uncertainty touching the locality of property in action clearly evinces the necessity of legislative interposition in ascertaining where such property should be located for the purpose of taxation.  The law does not operate beyond the jurisdiction of the state ; it neither affects the foreign corporation nor the debtor, but simply the property of the creditor, who is a citizen of this state, and subject to its laws.  *Great Barring-*

ton v. *County Commissioners,* 16 *Pick.* 572; *Ang. & Ames on Corp.* (*4th ed.*) § 458. This exception cannot prevail.

It is *lastly* objected that the assessment is illegal.

1. Because no separate poll or capitation tax was levied in making the assessment of city taxes, and—

2. Because the assessment should have been not according to the *actual value* of the land alone, as directed by the state law, but having regard *as well to the value as the rents* of the real estate, as required by the city charter. Both exceptions are well taken.

Upon the first point, I concur entirely in the opinion of Justice Potts.

The second exception is equally fatal in principle. The charters of all municipal corporations are delegations of portions of eminent demesne to the body corporate. They cannot be destroyed by subsequent general enactments. The charter and ordinances of the city are at all times open to repeal or amendment, but while they continue in force it is the right of every citizen to have them enforced and to enjoy their protection. If they are violated or disregarded the rights of the citizens are invaded, and he is entitled to redress.

Upon the second ground of exception, *viz.,* that the assessment was not in accordance with the city charter, there is some dispute in regard to the fact, but upon the first point there is none. Either exception is equally fatal to the legality of the assessment.

The last exception is not within the saving operation of the act of 26th March, 1852, (*Pamphlet Laws* 526). The substantial rights of the plaintiff have been impaired in a particular not within the power of this court to correct, and therefore, the entire assessment, as against the prosecutor, must be set aside.

Potts, J. Several reasons are assigned against the legality of the assessment of taxes, made in 1851, by the assessor of the first ward of the city of Trenton, on personal property of the prosecutor, who is a resident of that ward.

1. The first is, that he illegally assessed a tax on two hun-

dred and thirteen shares of the stock of the Delaware and Raritan Canal, and Camden and Amboy Railroad and Transportation Companies, owned by the prosecutor, and valued at $28,329, which stock, it is alleged, is by law exempted from taxation.

By the 26th section of the act to incorporate the Delaware and Raritan Canal Company, passed February 4, 1830, it is provided, " That from and after the completion of the said canal and feeder, it shall be the duty of the treasurer of the said company, under oath or affirmation, to make quarterly returns of the number of passengers, and the number of tons of merchandise and other articles, transported thereon across the state, to the treasurer of this state for the time being; and thereupon to pay the said treasurer of this state the sum of eight cents for each passenger, and the sum of eight cents for each and every ton of merchandise so transported thereon, excepting the articles of coal, lumber, lime, wood, ashes and similar low priced articles, for which two cents per ton shall be paid as aforesaid ; *and that no other tax or impost shall be levied or assessed upon the said company.*" And the 23d section of the act incorporating the Camden and Amboy Railroad and Transportation Company, passed on the same day, after making a substantially similar provision for the payment to the state treasurer of a transit duty of ten cents per passenger, and fifteen cents per ton for merchandise transported thereon, contains *a clause of exemption in the same words.*

That the *property* of these companies, that is, the canal, the railroad, the land upon which they are located, and their appurtenances proper, are exempted from taxation by the above mentioned provisions of their respective charters, can scarcely be considered at this day an open question.

In *The State v. Berry et al.,* 2 *Harr.* 80, it was held that a provision in the charter of the Paterson and Hudson River Railroad Company, " that no further or other tax or impost shall be levied or assessed upon said company," operated as an exemption not only of the franchises or privileges of the company, but of the company generally and its property from taxation for county, township, and all other purposes than

those stated in the charter. And Mr. Justice Dayton, in delivering the opinion of the court, said, that to take away the inherent and all important right of government to levy a tax upon property for its support, the language should certainly be clear and explicit; but words, he thought, could not have been adopted less liable to doubt than such as were here used.

Subsequently two different attempts were made to tax the property of the Camden and Amboy Railroad Company. The first came up for review in the case of *Hillegas et al.*, 3 *Harr.* 11, when Chief Justice Hornblower delivered the opinion of the court. He said that the exception, that the property of the company was exempted from taxation by the provision of its charter, was fully sustained upon the principles unanimously adopted by the court in the case of *The State* v. *Berry;* that the exempting clause in this charter was precisely similar (with the exception of one or two immaterial words) to that of the Paterson and Hudson River Railroad Company, and the decision must be the same as in that case.

The next case was that of *The Camden and Amboy Railroad Company* v. *Commissioners of Appeal*, 3 *Harr.* 71, in which the opinion of the court was delivered by Mr. Justice Ford. The assessment was on certain property belonging to the company, and it was held to be contrary to the statute, and was reversed and set aside.

The last reported case in which this question came up was that of *Gardner, Assessor of Jersey City*, v. *The State,* 1 *Zab.* 557; and in this case the Court of Errors affirmed the principles settled in the three preceding cases, by a vote of seven to two, the Chancellor and all the law judges concurring with the majority.

But it is insisted, on the part of the defendant in *certiorari*, that this case is not within the principle of the cases above cited ; that the tax here is assessed not on the property of the *companies*, but on stock of these companies, which is the property of *an individual stockholder ;* that this stock is not within the terms or intention of the exempting clause ; that, by the 4th section of the supplement to the act concerning taxes, passed March 14, 1851, " public stocks and stocks in corpora-

tions, whether within or without this state," are made liable to taxation ; and that the fifth section of said supplement does not exempt this stock.

If the stock of these companies is within the exemption contained in their charters, it is of no consequence what the true construction of the provisions of the supplement of 1851 may be. These charters are in the nature of executed contracts, which the legislature have no constitutional power to alter or impair. *Fletcher* v. *Peck*, 6 *Cranch* 87 ; *State of New Jersey* v. *Wilson*. 7 *Cranch* 164 ; *Terret et al.* v. *Taylor et al.*, 9 *Cranch* 50 ; *Dartmouth College* v. *Woodward*, 4 *Wheat.* 518 ; *Green et al.* v. *Biddle*, 8 *Wheat.* 1 ; *Providence Bank* v. *Billings et al.*, 4 *Peters* 514. The first question therefore is, whether the clauses in the charters of these companies, which declare that " no other tax or impost shall be levied or assessed upon the said company," exempt from taxation the stock of the companies in the hands of the stockholders, or only the property of the companies in the hands of the corporation.

It is settled that, by the provisions of the contract, the property of the companies is exempt: a tax upon the business done by the companies is paid in lieu of a tax upon their property. In this way the joint companies already pay a very large sum annually to the state. For the first time, in 1851, the stock of incorporated companies is made taxable, and the question is thus brought up. The companies are still bound by their contract to pay to the state the transit duties, the tax upon their business, and the state is equally bound by its contract to exempt them from other taxation. Are the stockholders of these companies now liable to pay a tax upon their *stock ?* If they are, the exemption clauses were not worth the paper upon which they were written. So much of the property of every incorporated company in the state as is represented by the capital stock is exempted in the act of 1851, where the stock is taxed in the hands of the stockholders. It could not be otherwise without imposing a double taxation. To tax the property and tax the stock is, in effect, to tax the same thing twice over. The stock is the representative of the property ; the certificate of stock only evidence of title to the property,

and worthless, except as such evidence; and a tax upon the stock is in fact a tax upon the property it represents.

I am unable, therefore, to yield my assent to the course of reasoning by which it is sought to be established, that the state, having exempted the property of the companies from taxation by the express terms of the contract, and for a con-sideration of great value, can now tax the share which each member of the company holds of this very property. True a corporation is an artificial person, a legal fiction created by the law, and its members or shareholders are real persons; they are not the same in personal identity. But the property is the same, whether considered as in the hands of the corporation or the corporators; and it is the *property*, not the person, which is the subject of exemption. Who, by the charter, are constituted the company? The second section of the charter answers, " the persons holding the stock." With whom was the contract made? It was made with the company; it was not a contract until the stock was subscribed, the company formed, and the charter accepted. If the property of the company is taxed, who pays the tax? Undoubtedly the members, the holders of the stock. If that property is exempted from taxation, who has the benefit of the exemption? Certainly the stockholders. It is to be sure one thing to take the stockholders' money from the treasury before it is divided, and another thing to take it from their pockets after it has been divided; and this is precisely the difference, and the only real difference, between taxing the company and taxing the stock. The contract was that no tax should be assessed upon the companies, that is upon the property of the companies, other than the transit duties. This is not disputed. To tax the property of the companies *as* the property of the companies, would be a violation of the contract. This is not disputed. How, then, can it be that to tax each member's share of the property in his hands under the denomination of stock, is not a violation of the plain meaning, the manifest intention, of the contract. Is it not doing precisely the thing prohibited, in a different way?

All contracts are to be construed according to the intention

of the parties. Looking into these charters we see, in one and the same section, first, a stipulation that the companies shall pay certain taxes, in the shape of transit duties, on all the business they shall do during the continuance of the charters; then, immediately following, is the exemption, or clause of limitation upon the taxing power of the state, in the words which have been already quoted, that no *other* tax or impost shall be levied or assessed, &c. "No other," referring to the transit duty clause immediately preceding—the tax to be paid on the business. Now can it be that the intention of the parties to this contract was that this limitation of the taxing power should extend no further than to exempt the property of the company in the technical possession of the artificial thing created by the act, and leave it open to taxation in the hands of the real owners? I do not think so.

This very question came up in the Supreme Court of the United States, in the case of *Gordon* v. *Appeal Tax Court*, 3 *How.* 133. The legislature of Maryland had exempted certain banks from taxation. The stipulation was "*not to impose any further tax or burthen upon the banks,*" and the court, with one voice, held that it exempted the respective capital stocks of the banks as an aggregate, and the stockholders from being taxed as persons on account of their stock. The language of the exemption in this case is substantially the same as that in the case under consideration, and my opinion is, that this objection, therefore, to the assessment made by the assessors must be sustained.

2. The second objection is, that the assessor assessed bonds of the above mentioned companies, held by the prosecutor, amounting to $5,317, which, it is insisted are also exempted from taxation by the clause heretofore mentioned. It seems the joint companies have invested several millions of dollars in the construction of their works and the appendages thereto, of which three millions is represented by the stock, and four millions by bonds. But the principle, that the property of the companies, whether in their hands as corporations, or in the hands of the individual stockholders as stock, is exempt from taxation by the provisions of the charters, does not reach this

case. The bonds are in no sense the property of the companies or of the stockholders, as such. They are debts due from the companies, in the hands of their creditors. A tax upon them is not a tax upon the companies, or their property. If the lands of A. are exempted from taxation, *a fortiori* the title deeds to those lands are also exempt; but it does not follow, if A. owes to B. a debt, that that is exempt in the hands of B., though it may be a lien on the lands. The supplement to the tax law imposes a tax on "debts due from solvent debtors, whether on contract, note, bond, or mortgage." Railroad and canal company bonds are within this description of property. The assessment in this particular was right.

3. The next error alleged is, that the prosecutor is assessed for certain shares of stock of the Trenton Banking Company, and of the Mechanics and Manufacturers Bank at Trenton, held by him. It is insisted that this stock is not liable to taxation because, by the 45th section of the act concerning taxes, it is provided that the president and directors of every incorporated bank in this state are required to pay, or cause to be paid, into the treasury of this state, on or before the first day of January in each and every year, one half of one per cent. upon the whole amount of capital stock actually subscribed and paid in, and which may be hereafter subscribed and paid in to such bank or company. And it is insisted, in the second place, that if the stock of these banks is liable to be taxed in the hands of the stockholders, then so much of the property of the bank, represented by the capital stock thereof, as is so taxed, is exempted, by virtue of the 4th article of the 5th section of the supplement to the act concerning taxes, from the tax of one half of one per cent. I am of opinion that this stock is taxable in the hands of the prosecutor, for the following reasons:

1. There is no provision in any of the bank charters that the tax of one half of one per cent. on the amount of their capital paid in, which they pay as corporations, is to operate as *an exemption* from other or further taxation, either upon the property of the corporations held by them or upon the stock held by individuals. The general rule is, that all persons

and property, and every branch of business in the community, is subject to the burthen of taxation; and the rule by which these burthens are to be distributed is, within certain limitations, for the discretion of the legislature. Corporations take their charters and hold their property subject to their share of these necessary public burthens, if nothing appears to the contrary. To tax the property or stock of a corporation, is therefore no violation of the contract by which it was created, unless that contract contained a stipulation against taxation. *Providence Bank* v. *Billings et al.*, 4 *Peters* 514. There were four banks existing in New Jersey in 1810, neither of whose charters contained a word on the subject of taxation. In 1810, an act was passed to tax them one half of one per cent. on the amount of their paid capital. The legislature had, at *that time*, the same right to make that tax one per cent., or to declare that, in addition to a half per cent. on their capital, to be paid by the banks, the stock should be taxed in the hands of the stockholders like any other personal estate, as they had to pass the act they did. And having *then* imposed this tax of one half of one per cent., and subjected all the banks subsequently chartered to the same tax substantially, and having appropriated that tax to the school fund, they have the same right *now*, that they had *then*, to increase or diminish that tax in amount, or to impose another tax on the stock, for either the same or general purposes.

2. That it was never the intention of the legislature to part with this discretionary power, is abundantly manifest from the fact, that they have frequently both asserted and exercised it. The charter of the *state banks*, passed in 1812, provides that these institutions shall be subject to the same *taxes*, to be collected under the same rules and regulations as are or *hereafter shall be* imposed upon the different banks already established in this state. The charters of the Farmers Bank of New Jersey and the Paterson Bank, passed in 1815, contain two separate provisions : first, that they shall be subject to such taxes as all other banking institutions in this state *are liable to ;* and secondly, that they shall be liable to pay into the treasury of this state the same tax on the amount of the capital stock ac-

tually paid in, &c., as the banks already chartered are liable to pay. The first of these provisions clearly recognises a present or future liability of existing banking institutions to other than the tax specified in the second. The charters of the Farmers and Mechanics Bank of New Brunswick and Princeton Bank, passed in 1834, the Hamburgh Bank, in 1837, the Somerset County Bank, in 1848, and the Farmers' Bank of Wantage, in 1849, each contains a provision that the capital shall be "subject to same tax as other banks of this state are *or shall be* subject to, and the same shall be levied, and collected and paid, in the same manner as taxes or other banks of this state now are *or hereafter may be* recovered." The supplement to the charter of the Belvidere Delaware Railroad Company (1837) conferring on said company banking privileges, provides "that the said banking capital shall be liable to the same tax that is now *or hereafter may be* by law imposed on the banking capital of the banks in this state." A number of the bank charters contain express provisons that, in addition to the tax on their paid capital, their real estate should be taxed as that of others. Other charters *did not* contain this provision, but their real estate was nevertheless taxed. One of these last was the State Bank of Morris, which, in 1824, represented to the legislature that they paid a tax on $100,000 capital whereas $32,000 of it was invested in lands taken for bad debts, *on which they also paid the customary tax.* And in the general banking act of 1850, it is provided that "every association under the provisions of this act, &c., shall be subject to all the provisions, duties, liabilities, *taxes,* and penalties to which the incorporated banks of this state, &c., are or *may be* subject, or which *may be* provided, prescribed, or imposed by the laws of this state."

Again, I am of opinion that the imposition of a tax upon the stock of banks in the hands of stockholders does not impair the right of the state to collect and receive from these corporations the whole amount of the tax of one half of one per cent. on their capital actually paid in. The 5th section of the supplement to the act concerning taxes provides that "*so much* of the property of incorporated companies, represented by the

capital stock thereof, *as*, by virtue of this act, *is taxed* in the hands of the stockholders," " shall be exempt from taxation." This phraseology is ambiguous, but the legislature could not have intended to embrace the bank tax within the exemption. That is a special tax imposed for a special purpose, not payable at the time, nor assessed and collected as other taxes are assessed and collected. It is a tax stipulated for unconditionally in the bank charters, as well as imposed by the general act. The bank tax is for the benefit of the school fund. The tax on stock imposed by the supplement is for county and township purposes. If the imposition of a tax on the stock was intended *wholly* to exempt the capital from taxation, the effect was to relinquish a revenue of $18,700 per annum, theretofore appropriated to the school fund; if only a *part* was to be relinquished, who can tell, from the language of the clause cited from the 5th section of the supplement, what part? If such exemption had been intended, the act would have been more specific in its phraseology.

Again, how could the construction contended for be applied in practice? A large portion of the stock of the New Jersey banks is held by non-residents of the state, and consequently is not taxable at all. That held in the state is liable to be taxed at greater or less rates, according to the residence of the holders; if held in one place, it is taxed at the rate of six-tenths of one per cent. on its par value, if in another, at but one-tenth of one per cent. How are the banks to ascertain what amount of tax, under this supplement, is actually assessed upon their stock? or, having ascertained this, what is the deduction to be made from the tax on the capital? or, that ascertained, how is the amount deducted by the process to be disposed of by the banks? among all the stockholders alike? or among those only who have paid a tax on their stock? And if so, in what ratio, according to the amount of tax per share they have each paid? or by what rule? But in addition to these difficulties, which the construction contended for would involve, it may well be questioned whether the bank tax was ever considered by the legislature or the banks as strictly a *property tax;* whether it is not really a tax or duty imposed upon the business of bank-

The State v. Branin.

ing; and if so, it is not within the *language* of the exemption, as I clearly think it is not within its *intention.* There is nothing therefore, in my opinion, in this objection.

4. The fourth error insisted on is, that the assessor assessed twenty shares of stock of the Mechanics Bank of New York, and twenty-four shares of Philadelphia and Trenton Railroad stock, held by the prosecutor, and that this, being *extra-territorial property*, is without the taxing power of the state.

This is personal property. The general rule in reference to such property is, that it follows the person, and wherever the domicil of the proprietor is there the property is, for certain purposes, to be considered as situate. *Story's Conf. of Laws*, § 379, and cases there cited ; *State* v. *Ross*, decided at this term ; *Ang. & Ames on Corporations*, 4th ed., § 458.

The language of the act is, that "the term personal estate, as used in this act, shall be construed to include goods and chattels of every description, including steamboats and other vessels, money, debts due from solvent debtors, whether on contract, note, bond, or mortgage, public stocks and *stocks in corporations, whether within or without this state.*" *Pamph. L.* 1851, *p.* 272, § 4.

True this stock is, in fact, only the evidence of the ownership of property, and the property itself is out of this state ; and it is asked, can the legislature impose a tax on lands out of the state which are owned by citizens of this state ; and the case of *McCulloch* v. *The State of Maryland*, 4 *Wheat.* 316, is cited as an authority to the contrary. But that case only establishes the proposition, that a state could not tax a branch of the United States Bank established within its territory by act of Congress, because that might enable such state to retard, impede, burthen, or control the operations of the constitutional laws enacted by Congress to carry into effect the power vested in the national government. It does not reach the present case ; nor am I aware of any constitutional limitation of the power of the legislature to impose such rule of taxation as they may see fit upon their own citizens, except so far as may be created by contracts entered into by the legislature itself, or may grow out of the relations of the state to the federal government. In

the case of *McCulloch*, above referred to, it was admitted that the state of Maryland had a right to tax the land owned by the Bank of the United States within that state, and also the stock of that bank owned by her citizens, in common with other property of the same description throughout the state. Any state may, undoubtedly, tax an income derived by any of her citizens from extra-territorial sources; and I see no solid ground of objection to such a tax as that complained of here. It is clearly within the terms of the law, is contrary to no constitutional provision, and the objection to it must therefore be overruled.

5. The only other objection raised against the legality of the assessment in this case, which I propose to notice, is, that though a very large proportion of the taxes assessed were for the use of the city of Trenton, but a single poll tax of fifty cents was assessed. The act concerning taxes, and the supplement thereto, furnish the rule for assessing state, county, and township taxes; for although the *amount* of tax to be raised for the state is fixed by the legislature, that for the county by the board of chosen freeholders, and that for the township by town meeting, yet the *mode* of assessing these taxes is reserved exclusively for legislative action; and the legislature having, in the supplement, directed simply, " that *a poll tax* of fifty cents shall be assessed upon every white male inhabitant of this state of the age of twenty-one years and upwards," without saying, in terms, for what purposes, the fair inference seems to be that it is for *all purposes contemplated by the act.* But the city taxes stand upon a different footing. The 25th section of the city.charter provides " that it shall and may be lawful for the common council of said city to order and cause to be assessed and raised by tax, from year to year, such sum or sums of money as they shall deem expedient for defraying the expenses of lighting the streets of said city, regulating, paving, flagging, and gravelling the streets, maintaining and supporting the poor, schooling poor children, for defraying the contingent expenses of said city, and for all other objects and purposes authorized by this act, *to be assessed and collected in such manner as the said common council shall by ordinance direct.*" This language confers upon the common council ex-

clusive jurisdiction over the whole subject of taxation for city purposes; they are not only to determine what amount is to be raised, but *how* it is to be raised.  True the common council can pass no ordinance inconsistent with the laws and constitution of this state or of the United States; but the state law does not *prohibit* a poll tax for city purposes : its language is directory, and has reference only to those taxes which were the subject matter of the act.

We are then left to find the *mode* of assessing taxes for city purposes in the ordinances of the city council.  This is prescribed in an ordinance of the 14th February, 1842.  The second section directs that the assessor (assessors of the several wards, as it is amended by the supplemental ordinance of May 6, 1844,) shall take a true account and make out an exact list of the *persons*, articles, and things within the said city *made ratable by the laws of the state*, " by which account of rates, taken as aforesaid, all assessments for the year thereafter shall be made." And the third section directs " that when the said assessor shall at any time be served by the town clerk with an order made by the common council raising any sum of money, he shall proceed, within the time limited in the said order, to assess the same fairly and impartially upon all *persons* and property, real and personal, being and lying within the city, *made ratable by the laws of the state.*"  Undoubtedly these provisions direct a personal, as well as a property tax to be raised for city purposes. True, by virtue of a supplement to the city charter, passed March 7, 1844, it is made the duty of the city assessor to include the state, county, township, and city taxes in one assessment; but that provision was made merely to save the expense of several assessments, and does not affect the mode of assessing city taxes prescribed by the above ordinances.  The complaint here is, that though, in 1851, twenty thousand dollars was raised for city purposes, and only about four thousand for all other purposes, yet the assessors only assessed the poll tax of fifty cents authorized by the state law, and no personal tax at all for the city, under the provisions of the city ordinance.  I think in this there is error, for which the prosecutor is entitled to relief.

I also concur with the Chief Justice, that the other point under the city charter is well taken, and that this whole as-

sessment must be absolutely set aside, as erroneous in particulars which are incapable of correction.

CITED in State v. Comm'rs of Mansfield, 3 Zab. 512; State v. Bentley, Id. 545; State v. Danser, Id. 553; State v. Platt, 4 Zab. 121; State v. Powers, Id. 401; State v. Blundell, Id. 404; State v. Clarke, 1 Dutch. 55; State v. Mellick, Id. 564; State v. Thomas, 2 Dutch. 182; Newark City Bk. v. Assessors of Newark, 1 Vr. 20; M. & T. Bk. v. Bridges, Id. 115; State v. Haight, 2 Vr. 412; State v. Morristown, 4 Vr. 61; State v. Mills, 5 Vr. 180; Rader v. Road Dist. of Union, 7 Vr. 276; State v. Comm'rs of R. R. Taxation, 8 Vr. 230, 248; State v. Chambersburg, 8 Vr. 260; State v. Jones, 9 Vr. 85; Stonington Sav. Bk. v. Davis, 1 McCar. 290; Michener v. Lloyd, 4 C. E. Gr. 38.