THE STATE v. THE ST. LOUIS, KANSAS CITY & NORTHERN RAILWAY COMPANY et al., Appellants.

1. **Taxation of Railroads**: NORTH MISSOURI RAILROAD. Until the act of March 10th, 1871, providing a uniform system of assessing and collecting taxes on railroads, railroad property was not by the general law subjected to taxation in specie. The only form of taxation provided for was a tax against the share-holders upon their shares; and for this there was no lien on the property of the company. This was the mode of taxation applicable to the North Missouri Railroad Company. NORTON, J., dissented.

2. ———: BACK TAXES: INNOCENT PURCHASER. A general act provided for the levying of taxes on railroad property for back years. After its passage the North Missouri Railroad changed ownership. Its property had not been subjected to taxation during those years. After the purchase a levy was made under the new act. *Held*, that as against the new owner the levy was of no validity. He was an innocent purchaser, and the act was retrospective and void as to him. NORTON, J., dissented.

3. ———: NORTH MISSOURI RAILROAD. The act of March 17th, 1868, amending the charter of the North Missouri Railroad Company did not have the effect of subjecting the property of that company to taxation as real and personal property. It made it liable to be so taxed; but nothing in the act changed the method of taxation provided by the general revenue law, which was a tax against the shareholders on their shares.

4. ———: TAXATION PREVIOUS TO 1872. The special board of equalization created by the act of March 10th, 1871, was not authorized by that act to levy taxes for the year 1871, or previous years on the real and personal property *in specie* of any corporation which had not before that act been subjected to taxation in that form.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Wells H. Blodgett* for appellants.

As against an innocent purchaser a tax is not a lien until after it is levied, and it is shown by the record in this case that said defendant acquired the property on February 6th, 1872, and that said taxes were not levied by the county court of St. Charles county until long, after said date. *Heine v. Levee Commrs.*, 19 Wall. 659 ; Cooley on Tax., (1 Ed.) 305 ; Hilliard on Tax., 463, § 63; *Ream v. Stone*, 102 Ill. 359. There is nothing in the statute under which the taxes in question were assessed from which it can be fairly said that the legislature intended to create a lien in favor of the State and county for such " back taxes" as are sued for in this action. Had that been the intention, appropriate words to that effect would have been employed. In the absence of a plain expression of such intention the statute will not be construed to have such retroactive effect. Sedgwick on Stat. and Con. Law, (1 Ed.) 190 ;· *Woart v. Winnick*, 3 N. H. 477; *Towle v. Eastern R. R. Co.*, 18 N. H. 547; *Willard v. Harvey*, 24 N. H. 344; Wade on Retroactive Laws, § 194. Prior to the act of March 10th, 1871, and during all the years in question, the revenue laws of the State required all taxes against corporations to be

levied on the shares of their capital stock, and not on their property, and declared such taxes a lien on said shares and not a lien on their property, and hence if the act of March 10th, 1871, was intended by the legislature to authorize taxes to be levied from 1862 to 1871 on property which was not the subject of taxation during said years, then said act was to that extent retrospective and void under the constitution of the State. R. S. 1855, p. 1331, §§ 30, 31, 32; Ib., p. 1342, §§ 25, 26; Gen. St. 1865, p. 103, §§ 27, 28, 29; Ib., p. 113, §§ 28, 29; Const. Mo. 1865, art. 1, § 8; Sedgwick on Stat. and Con. Law, 190. Both methods of taxation cannot be enforced at the same time, as it would amount to double taxation. *H. & St. Jo. R. R. Co. v. Shacklett*, 30 Mo. 558; *Tallman v. Butler County*, 12 Iowa 531. By section 6 of the amended charter of the North Missouri Railroad Company all the property of said company was by statute made and declared to be personal estate, and as such was vested in the respective share-holders of said company, in proportion to the number of shares held by each, and it appearing from the record that all said property remained personal estate, and as such vested in said share-holders until the sale of said road to Jessup, on August 6th, 1871, it was not competent for the legislature (as against the St. Louis, Kansas City & Northern Railway Company, who purchased February 6th, 1872), to authorize said property to be afterwards assessed or taxed as real estate, for the same years said property had been by law declared to be personalty. If the shares were taxed, then no further assessment of the property for the same year could be made. To tax the shares was to exempt the property represented by the shares. *H. & St. Jo. R. R. Co. v. Shacklett*, 30 Mo. 558; *Tallman v. Butler Co.*, 12 Iowa 531; *Middlesex R. R. Co. v. Charlestown*, 8 Allen 333; *Wilmington R. R. Co. v. Reid*, 13 Wall. 264; *State ex rel. N. J. R. R. Co. v. Haight*, 34 N. J. L. 319.

*Wm. A. Alexander* and *H. C. Lackland* for respondent.

There can be no question about the constitutionality of the act of 1871. *State v. Severance*, 55 Mo. 378; *Washington Co. v. R. R. Co.*, 58 Mo. 375; *Pacific R. R. Co. v. Watson*, 61 Mo. 57; *State v. R. R. Co.*, 60 Mo. 143. The lien and liability for taxes had been a charge on the property ever since 1862. It could not be evaded by a transfer. The policy of the law will not permit taxes to be evaded in any manner whatever, as long as the property is in sight and can be followed. *Wellshear v. Kelley*, 69 Mo. 343; *State v. Heman*, 70 Mo. 441; *s. c.*, 7 Mo. App. 420. The North Missouri Railroad Company is and has been since August, 1871, insolvent. The act of 1871 was notice to all the world (if notice was necessary) of the State's intention to enforce its lien for itself and all its municipalities. The lien for taxes is necessarily prior to all other liens, and the lien for the last year is prior to all other years. On no other principle could the government be maintained, and the burthen of taxation be made to bear equally and justly on all alike. Under all the laws from 1855 down, the taxes were treated as debts due from the corporation, and not from the share-holders. There is nowhere anything to exempt the property of the North Missouri Railroad Company from taxation or to require it to be assessed to the share-holders. On the contrary, the law required the stock and property to be assessed against the corporation; and it looked to the corporation for the payment of the taxes, and not to the stockholders. But the property was not assessed in any shape. If it be maintained that it ought to have been assessed in shares, then it is evident that the company was derelict in its duty in not delivering a list of the shares to the assessor; and the company cannot now be heard to complain that the property was not assessed in that way. According to the theory of the defendant, the shares represent the property, and the property repre-

sents the shares; and theoretically in law they are both equal in value; one is the equivalent of the other. The result ought to be the same in either case, whether we assess the property or the stock. It must be conceded that the State has power to tax one, or the other, or either, at its pleasure, interchangeably. Now even if it be conceded that the laws in force for the years in question, required the property to be assessed in shares; yet, if by the neglect of the officers of the company, it was not done, we are unable to see that there is any principle of law to prevent the legislature from afterwards assessing the property instead of the shares for the years omitted. *State v. Dulle,* 48 Mo. 282; *St. Joseph v. R. R. Co.,* 39 Mo. 476; *State v. R. R. Co.,* 60 Mo. 143; *St. Louis M. L. Ins. Co. v. Charles,* 47 Mo. 462, 466, 467; *H. & St. Jo. R. R. Co. v. State Board,* 64 Mo. 294, 307; Cooley on Tax., pp. 221, 222, 223, 228 to 230; *State R. R. Tax cases,* 92 U. S. 576. *Bailey v. Maguire,* 22 Wall. 229; *Tucker v. Ferguson,* 22 Wall. 527, 575; *West Wis. R'y Co. v. Supervisors,* 93 U. S. 595; *Grim v. School District,* 57 Pa. St. 433.

HENRY, J.—This suit was instituted in the circuit court of St. Charles county against the defendants for the recovery of taxes levied upon the railroad and other real and personal property of the North Missouri Railroad Company in 1872, for ten years, from 1862 to 1871, inclusive. The property in question, prior to 1872, had not been assessed for either of those years, and the levy in 1872 was made under an act of the legislature, approved March 10th, 1871. After that act was passed, and before the levy of the taxes sued for, the North Missouri Railroad and all the other property of that corporation, were sold and conveyed to Morris K. Jessup, who subsequently sold and conveyed the same to the St. Louis, Kansas City & Northern Railway Company. Defendants had judgment in the circuit court, which, on appeal to the St. Louis court of appeals, was reversed, and they have appealed to this court.

Was the property, as contradistinguished from the capital stock of the company, subjected to taxation for any of the years from 1862 to 1871, inclusive? This is the controlling question in the case.

By an act of the legislature approved January 7th, 1853, amendatory of the act incorporating the North Missouri Railroad Company, it was provided that " the capital stock, together with all machines, wagons, cars, engines or carriages belonging to the company, together with all their works and other property, and all profits which shall arise from the same, shall be vested in the respective shareholders of the company forever in proportion to their respective shares, and the same shall be deemed personal estate and be exempt from any public charge or tax whatsoever, for the period of five years after the passage of this act." Sess. Acts 1853, p. 323, § 6. By this act, the capital stock and all other property of that corporation were exempt from taxation until January 7th, 1858, and after that date as long as section 6 of the act of 1853, *supra*, remained unrepealed, the property of the company was subject to taxation only as personal property in a manner to be prescribed by the general assembly. *Bangor & Pisc. R. R. Co. v. Harris*, 21 Me. 233. By the express declaration of the statute, all its capital stock and other property was vested in the holders of the stock forever as personal property. By the revenue law in force when the period for which the property was exempt from taxation expired, it was provided that : "For the support of the government, etc., a tax shall be levied on the following objects,     *     *     shares of stock in incorporated companies at their cash value, excepting manufacturing companies, the property of which alone shall be taxed,     *     *     all property owned by incorporated companies, over and above their capital stock."

It is clear that by that law the property of the corporation, except such as it owned over and above its capital stock, was not subjected to taxation. The State could

have taxed either the capital stock, or the property of the corporation, and might have imposed the tax on the shareholders, or against the corporation, on the aggregate of its capital stock. It may be conceded, only for the purpose of the argument, what has never been held by any court, that it could have subjected to taxation the shares of individual stockholders, the capital stock, and the property, but the question is, had the legislature, up to 1871, seen proper to do so?

That property is subject or liable to be taxed, and has been subjected to taxation, are not one and the same thing. Prior to the adoption of the constitution of 1865, the legislature frequently exempted property from taxation by express enactment. All the property in the State was subject to taxation, and such as was exempted by statute, like that of the North Missouri Railroad Company, might have been subjected to taxation, or in other words, was liable to be taxed, but was not subjected to taxation, but exempted. From 1858 to 1871 the property in question, as real and personal estate, was not subjected to taxation, and without a repeal of section 6 of the act of 1853, was not subject to taxation, except as personal estate.

In lieu of a tax against the property of the corporation, the State imposed a tax upon the shares of its capital stock owned by individuals, and sections 17, 18 and 19 of the act of 1857, which were retained in every revenue law passed until 1871, provided as follows: Section 17. Persons owning shares of stock in banks and other incorporated companies taxable by law, are not required to deliver to the assessor a list thereof, but the president or other chief officer of such corporation shall deliver to the assessor a list of all shares of stock held therein and the names of the persons who hold the same. Section 18 provides that the taxes on such shares shall be paid by the corporations respectively, and gives the corporation a lien on such shares respectively, for the amount so paid, and section 19 imposes a forfeit of $1,000 upon the president or other chief

officer who shall fail to comply with section 17. That the taxes thus levied were levied against the individuals own-- ing the stock, and not against the corporation, would seem to be a legitimate conclusion from those provisions in connection with section 1 of the same revenue law, which expressly declared that the tax should be levied " on shares of stock in incorporated companies at their cash value." Section 17 exempts persons owning shares of stock from the duty of delivering to the assessor a list thereof. Section 18 speaks of the taxes assessed on " shares of stock embraced in said list," and requires the corporation to pay the tax, and authorizes it to " recover from the owners of such shares the amount so paid, or deduct the same from the dividends accruing to such shares," and gives the corporation a lien on such shares respectively. If it was the purpose to levy the tax against the corporation, on its capital stock, there was no necessity for any mention of individual stockholders; still less for giving the corporation a lien upon its own property for a debt due from itself. The fact that the corporation was required to pay the tax on the shares, does not alter the character of the tax. Burroughs on Taxation, 171; *National Bank v. Commonwealth*, 9 Wall. 360.

But, it is contended, that if this was a tax against the share-holders, the corporation has escaped taxation entirely. This argument overlooks the fact that taxing the shares of individual stockholders is one way of taxing the property of the corporation. Taxing the shares against the stockholders, and also the capital stock, or the property represented by the capital stock is duplicate taxation. *State v. Branin*, 23 N. J. L. 484; *National Bank v. Commonwealth*, 9 Wall. 360; Angell & Ames on Corp., (8 Ed.) §§ 460, 461; *Smith v. Burley*, 9 N. H. 423; *Middlesex R. R. Co. v. Charlestown*, 8 Allen 330; *Gordon v. Baltimore*, 5 Gill 231; *Baltimore v. B. & O. R. R. Co.* 6 Gill 288; *Am. Bank v. Mumford*, 4 R. I. 478; *Providence Institution v. Gardiner*, 4 R. I. 488; Burroughs on Taxation, 174.

14—77

Mr. Burroughs says: "When the question is one as to the intention of the legislature, the argument that a tax on capital and shares is double taxation, is one of great weight, and the intention will not be imputed, unless the language is clear and explicit." Judge Cooley, in his work on the same subject, says: "A construction of the law is not to be adopted that would subject the same property to be twice charged for the same tax, unless it was required by the express words of the statute, or by necessary implication." Cooley on Taxation, 165. Some of the authorities above cited go further, and hold that a tax imposed on both the shares of stock against the share-holders, and also on the capital stock against the corporation, is unconstitutional. Angell & Ames; *State v. Branin, supra.* Not only was there no clear expression of legislative intent, within the years 1862 to 1871, to tax both the individual shares and the capital stock, or the capital stock and the property, but section 1 of the act of 1857, and sections 17 18 and 19 of that act, manifestly express a contrary intent.

But even conceding that the tax levied under that, and succeeding revenue laws of the same import, was a tax against the corporation on its capital stock, there was no law prior to 1871 imposing taxes on both the capital stock of corporations and their other property, except such as they may have owned over and above their capital stock. Such taxation would be double taxation, and although many cases may be found which hold that double taxation is not necessarily unconstitutional, all are agreed that no revenue law is to receive such a construction, unless the express words of the statute require it, or it is forced by necessary implication. The 1st section of the revenue law of 1857, requiring the tax to be levied on the shares of the capital stock, and on property owned by corporations over and above their capital stock, as effectually exempted the property from taxation as if it had been expressly so provided, and if the tax levied were against the individual

owners of the shares, it was equally a legislative exemption of the capital stock in favor of the corporation.

If the assessment provided by sections 17, 18 and 19 of the act of 1857, was a mode of levying the tax on the capital stock against the corporation, was the tax a lien on the property of the corporation?

While the capital stock represents the property and the property the capital stock of the corporation, the one is not the other. A tax levied on the railroad and rolling stock, would not be a lien on the capital stock, in the absence of an express provision of law, certainly not under a law declaring a lien on property for the taxes levied thereon. There is no more reason for holding a tax on the capital stock to be a lien on the other property of the corporation. The other property of the corporation is the capital stock, in the same sense that the capital stock is the other property. In one sense, a tax on the capital stock is a tax on the property. The State had the option to levy it on the property directly, or indirectly on the capital stock, or shares of capital stock. It makes no difference to the State which mode she selects, but the mode selected makes a very serious difference with an innocent purchaser of the property. Certainly a tax against the share-holders on their respective shares, would not, in the absence of an express provision of law, be a lien on the capital stock, and yet it is a mode of taxing the capital stock. The shares of the respective share-holders represent the aggregate of the capital stock no less than the capital stock represents the other property of the corporation. We are of the opinion that there was no lien upon the property of the North Missouri Railroad Company, other than that on the shares of the capital stock given to the corporation; that there was no lien, or any way of obtaining a lien for State or county taxes, either on the capital stock, or property of a corporation, for State or county taxes prior to 1871.

Is it within the power of the legislature, as against an

innocent purchaser of property, after his purchase, to levy taxes for years before he purchased, and declare a lien therefor on the property which was not subjected to taxation for those years?

We concede the right of the legislature to change the mode of taxing any property which has been subjected to taxation. For instance, if the legislature should, as it might, provide for levying taxes on the income from land, instead of the land itself, it might change the mode to a direct tax against the land as between the original owner and the State; but suppose the tax on the income were not declared a lien on the land, and the original owner should sell the property, would it be competent for the legislature afterwards to change the mode and levy the unpaid income tax upon the property, and declare it a lien thereon against the purchaser? This would be a retrospective law, impairing the obligation of the contract between the grantor and the grantee of the land, imposing burdens upon the latter which the former should have borne, for which the grantee would have no remedy against his grantor on the covenant against incumbrances, or any of the usual covenants in a deed, because the tax was not an incumbrance on the land when the deed was executed, but a mere personal charge against the grantor. It would be in effect, to charge one with a pecuniary debt or obligation which rested upon another. There is no warrant in the constitution for such legislation.

The case at bar is stronger against the act of 1871, if it receives the construction contended for by respondent's counsel, than the case supposed, for by that construction, not only the mode but the subject of taxation was changed, so as to impose upon a purchaser a liability, and upon his property a lien, neither of which existed when he made his purchase.

With respect to the taxes in controversy, for the years 1868 to 1871, inclusive, another question is presented. By an act of the legislature, approved March 17th, 1868,

amendatory of the charter of the North Missouri Railroad Company, it was declared that: "The North Missouri Railroad and the west branch thereof when completed to Kansas City, shall be subject to taxation on the cash value thereof at the rate assessed by the State on other real and personal property of like value." Conceding, as contended by respondent's counsel, that this operated to repeal section 6 of the act of 1853, which declared that the property of the North Missouri Railroad Company should be vested in the share-holders forever, and be deemed personal estate, and that the general assembly thereafter, if it saw proper, could tax it as real and personal estate, according to its value and character, was there any law in force, in either of the years 1868 to 1871, which required the taxation of that property?

The revenue law for those years, differed in its phraseology from previous revenue laws with respect to the enumeration of property to be taxed. Former laws specifically named the kinds of property to be taxed, while the act of 1865, following the constitution of 1865, declared, in effect, that taxes should be levied on all property, real and personal. That constitution contained an inhibition against the exemption of any person or corporation from taxation. It however did not repeal the 6th section of the act of 1853. That was not effected until the amendatory act of 1868 was passed and accepted by the corporation, if then. While the revenue law of 1865 declared that all property, real and personal, should be taxed, it contained the same provisions with regard to the mode of taxing the capital stock of corporations, as the revenue law of 1857, above quoted. Sections 27, 28 and 29 of the revenue law of 1865, (R. S. 1865, p. 103,) are identical with sections 17, 18 and 19 of the act of 1857. Those sections of the act of 1857 prescribed a mode of assessing the capital stock of corporations, whose other property was exempt by the very terms of the law. The retention of the same sections in the act of 1865, is conclusive that the legislature in-

tended to adopt the same mode of levying taxes on the capital stock of corporations.

That it was competent for the legislature to choose between the different methods of taxing the property of corporations, we think clear, notwithstanding the constitution and the law of 1865 required all property to be taxed. It could not have been intended by the constitution or the law, that corporations should be taxed on both their capital stock and property represented by that capital stock, or that the legislature should be restricted to the one mode or the other. The option still remained with the legislature to impose the tax on the capital stock or the other property, and that option it did exercise by imposing the tax, from 1865 to 1871, on the shares of the capital stock.

The act of 1868 did not subject the property of the North Missouri Railroad Company to taxation. It made it subject, liable to be taxed, as real or personal property, according to its actual value. This is all that can be claimed for it. That act had no more the effect to tax the property, than the constitution of 1865 to tax all the railroad property, and property of banking and other corporations in the State. Section 36, article 11 of that constitution, provided that : "No property, real or personal, shall be exempt from taxation," except public school property, property owned by the United States, this State, or counties or municipal corporations within this State. The effect of that section was to require the legislature to tax all property, except that embraced in the exceptions, and the construction placed by respondent's counsel on the act of 1868, which, if correct, applies as well to the constitution of 1865, would require the legislature to levy taxes on the property, real and personal, of all corporations, and yet until the act of 1871, the shares in the capital stock only, and not the property, was subjected to taxation. That section of the constitution applies with as much force to the property of other corporations, as the act of 1868 to the property of the North Missouri Railroad Company,

but the property of other corporations, as contradistinguished from capital stock, was not subjected to taxation until the passage of the act of 1871. It was subject, liable to be taxed, but the legislature, in its discretion, saw proper to tax the capital stock instead, which, it is conceded, was within the legislative discretion. It could choose either one of the modes, that of taxing the property, the capital stock, or shares of capital stock, and having selected one, with no intention expressed to tax either of the others, there can be no pretense that either of the others has been subjected to taxation.

Whether the capital stock of the North Missouri Railroad Company, or the shares of that capital stock, were in fact taxed for the years 1862 to 1871, is of no importance in the determination of the legal questions involved.

The shares of the capital stock only, were subjected to taxation; and under the act of 1871, the board of equalization was not authorized to levy the taxes in question upon the road-bed, rolling stock and other real and personal property of the North Missouri Railroad Company even if it had been within the constitutional power of the general assembly to authorize it. By selecting the shares of the capital stock for taxation, and not including the capital stock of the corporation or its other property as objects of taxation, they were as clearly exempt, under the authorities above cited, as if exempted by express terms. That act provided a method of assessing taxes against railroad corporations different from that which had previously prevailed, requiring the president or other chief officer to furnish to the State Auditor a statement in detail of all the property of the company, including road-bed, rolling stock, etc., upon which taxes were thereafter to be levied; and section 3 of the act reads as follows: "In case any such railroad or other property of any such company heretofore specified shall have been subjected to taxation, prior to the passage of this act for any year for which it shall not have been assessed and paid taxes, then

a separate return for each year for which taxes shall not have been paid, shall be made as herein required." It is not that "if any railroad company" shall have escaped taxation, but "if any such railroad or other property of any such company," shall have escaped. By its express terms, this section, the one under which the taxes in question were levied, related only to property, which, prior to its passage, had been subjected to taxation and escaped it, and the board of equalization was not by that section, authorized to levy back taxes upon property which had not theretofore been subjected to taxation. There may have been railroad property subjected to taxation which had escaped. The capital stock, or shares thereof, or property owned by such corporations over and above their capital stock, may have escaped taxation; and whether the property of the North Missouri Railroad Company, or its capital stock, or shares thereof had, or had not escaped taxation, there was no authority conferred upon the board of equalization to levy back taxes which should have been assessed by law for the years from 1862 to 1871 against the shares of the capital stock, or the capital stock, upon other property of the North Missouri Railroad Company, which, prior to 1871, had not been subjected to taxation.

Jessup was an innocent purchaser. True, he purchased after the passage of the act of 1871, prior to the levy of the taxes in question, but that act gave him no notice, actual or constructive, that the North Missouri Railroad Company was in arrears to the State or county of St. Charles for taxes, certainly not for taxes chargeable against the property purchased by him upon which no law had imposed taxes prior to that date. It is immaterial, however, what, if any, notice Jessup or the St. Louis, Kansas City & Northern Railway Company had, that the North Missouri Railroad Company had not paid the taxes for the years named, levied upon the capital stock, or shares thereof, if our views on the other questions considered are correct.

The judgment of the court of appeals is reversed. Hough, C. J., and Ray, J., concur; Norton, J. dissents.

Sherwood, J.—I did not have the advantage of hearing the oral argument in this cause. At present I incline to concur in the above opinion as to the period prior to the act of 1868; as to the time subsequent to that period, I am in more doubt. I will examine the whole matter hereafter and write a separate opinion.

Norton, J.—Not being able to reach the conclusion arrived at by a majority of the court, owing to the exceptional importance of the case and the principles involved, I deem it proper to state the ground for my dissent.

It is so clear that no argument is necessary to show, that after the expiration of five years from the passage of the act of 1853, exempting the North Missouri Railroad Company from taxation for that period, that it was liable to be taxed after that time. Under the law in force at the time said corporation became subject to taxation, viz: in 1858, it was made the duty of "its president or chief officer to deliver to the assessor a list of all shares of stock held therein, and the names of the persons holding the same." It was also provided, that "the taxes assessed on the shares of stock embraced in such list shall be paid by the corporations respectively, and they may recover from the owners of such shares the amount so paid by them or deduct the same from the dividends accruing on such shares; and the amount so paid shall be a lien on such shares respectively, and shall be paid before a transfer thereof can be made."

It appears in this case that from the years 1862 to 1871 inclusive, the said North Missouri Railroad was neither assessed according to the above mode of assessment, nor any other mode, and that for the said years it escaped taxation entirely, although subject to it. There was no change made by the general assembly till 1868 in the method of assessing the North Missouri Railroad Company, at which

time it was provided in section 4, Acts 1868, page 113, that "the North Missouri Railroad, and the western branch thereof when completed to Kansas City, shall be subject to taxation on the cash value thereof at the rate assessed on other real and personal property of like value." After the passage of this act the North Missouri Railroad was no longer liable to be assessed on its value as ascertained by the capital stock, but on the cash value of its property as other property. The only difference between the laws of 1855, 1863 and 1865 taxing corporations, and the law of 1868, *supra*, relating to the taxation of the North Missouri Railroad, as I construe them, was in the method of ascertaining the value of its property. Prior to 1868 its value was measured and ascertained by the amount of its capital stock, but when it was so ascertained, the tax imposed was a tax which the corporation was required to pay, and to which the State looked alone for payment. The property of the corporation was the substance, the capital stock the shadow. It was the substance and not the shadow intended to be taxed by the legislature. After the act of 1868 was passed, the capital stock was no longer the measure of the value of the property of said company, but by that act the cash value of the property was to govern in the assessment and levy of taxes. In the case of the *State v. Hann. & St. Jo. R. R. Co.*, 60 Mo. 143, it was held that it was within the power of the legislature to change the method of assessing railroad corporations.

The North Missouri Railroad was neither assessed under the law of 1868 nor the laws in force prior thereto for the years 1862 to 1871 inclusive, and in 1871 the general assembly passed an act to provide for a uniform system of assessing and collecting taxes on railroads, the 3rd section of which is as follows: "In case any such railroad or other property of any such company heretofore specified shall have been subjected to taxation prior to the passage of this act for any year for which it shall not have been assessed and paid taxes, then a separate return for each

year for which taxes shall not have been paid, shall be made as herein required." This section, in my judgment, is not susceptible of any other construction than that when a railroad shall have been subjected—that is, liable—to taxation, and had neither been assessed nor paid taxes, for any preceding year, that for such omitted year or years it shall be required to pay. The North Missouri Railroad, being liable to taxation for the years 1862 to 1871 inclusive, and not having been assessed for those years, either on its value as ascertained by its capital stock, or on its cash value as other real and personal estate, under the provision of the act of 1871 above quoted was liable to assessment and taxation for the years thus omitted.

That it was within the power of the general assembly, when property either real or personal, liable to taxation, had neither been assessed nor taxed for any year or years for which it might and ought to have been assessed and taxed, to provide for the assessment and taxation of the property for such omitted years, is, I think, evident. The principle is so consonant with every sense of justice and right, that it needs no citation of authorities to establish it. All property protected by the government and not expressly exempted from taxation, must, under the constitution and laws of our State, contribute to its support and maintenance, and these contributions are called for through the exercise of the taxing power, with which the legislative department of the government has been fully clothed. Taxes when imposed for general revenue are for protection afforded to person and property, and such taxes will always become odious if they are to be borne by the honest and well-disposed citizens alone, and avoided through fraudulent evasions of the law in not returning their property for assessment, or paying the taxes when levied, by those who are willing to receive the protection of the government without paying any of the cost of conducting it or bearing their due proportion of its burdens. Taxes are imposed annually, and required to be paid annually, to de-

fray the annual expenses incurred in affording protection, and when any property subject to be taxed has been omitted for any year or years during which it has been protected, the general assembly has as much power to authorize the assessment of such property and the collection of taxes thereon, as they had in the first instance to impose the tax, and the assessment when made and the taxes when levied relate back to the time when the property should have been assessed, and attach as a lien binding the property and superior to all intervening incumbrances.

The doctrine upon the subject is stated by Mr. Blackwell as follows : " The State has a lien upon land for taxes actually levied, and also for such as were properly chargeable upon the land, but by reason of the neglect of the officers intrusted with the duty of assessing it the land was omitted in the list of a particular year. 'Back taxes' as they are called may, therefore, be assessed and collected with the taxes of the current year, although the land upon which they are chargeable has passed into the hands of a *bona fide* purchaser. This power grows out of the necessities of the government, and the nature of a tax lien, which admits no property in the citizen while the tax remains unpaid, and regards the land as a pledge, perpetual in its character, to pay the debts and current expenses of the government. It would be a violation of principle to hold that a public right shall be lost by the mere neglect or delay of the public agent to enforce it, and in the absence of a statute expressly limiting the time in which it may be done, back taxes may be collected at any time. The State is never guilty of laches. In many cases it is expressly provided that assessments and reports of delinquents shall be made not only of taxes for the current but for the preceding year or years. Where such is the language of the law, the right to collect back taxes is clear." Blackwell on Tax Titles, (4 Ed.) p. 184.

So it was said by this court in the case of *Keating v. Craig,* 73 Mo 508 that "the lien of a special tax-bill, like

the lien for general taxes, is superior to any incumbrance, subsequent or prior to the levy of the tax with which the owner may charge the land." It has also been held in the following cases that if A convey his land to B by deed containing covenants against incumbrances, that A could be held liable to B under his covenants for the taxes on said land, although the land had neither been assessed for taxation nor the tax levied at the time of the sale and date of the deed; and the only principle upon which these rulings can be upheld is, that the taxes, although not assessed at the time of the sale, became, when they were assessed and levied, an incumbrance and lien upon the land which A by his covenant was bound to remove. *Blossom v. Van Court*, 34 Mo. 394; *Anderson v. Holland*, 40 Mo. 600; *McLaren v. Sheble*, 45 Mo. 130. So also in Minnesota, *Webb v. Bidwell*, 15 Minn. 479. So also in Massachusetts, *Cochran v. Guild*, 106 Mass. 29. So also in case of *State to use of Rosenblatt v. Heman*, 70 Mo. 441, in which, after a careful consideration of the subject, it was expressly held that the revenue law of 1865 gave the State a lien upon real estate for taxes, and as respects this question the revenue law of 1855 is substantially the same as that of 1865. But more than that, the act of 1871 gave an express lien on the property of corporations for the taxes which the act authorized, and embraced, as I construe it, the taxes sued for in this case.

The following principle may be deduced from the authorities above cited, viz: that when property is liable to taxation, and which has neither been assessed nor taxed for any year or years for which it was liable to be assessed and taxed, but has been entirely omitted for such year or years, that it is within the power of the legislature to provide for the assessment and taxation of such property for the omitted year or years, and when such assessment is made and the tax levied, such assessment and levy relate back to the time when it ought to have been made, and the tax becomes a lien on the property which is enforce-

able against it although it may have passed into the hands of a *bona fide* purchaser before such assessment and levy were made.

I am unable to perceive how, under the operation of this principle, the property of the North Missouri Railroad Company which was liable to taxation for the years 1862 to 1871 inclusive, and which the record in this case shows was neither assessed nor taxed for any of those years, cannot be subjected to the payment of the taxes for those years, which the State in this suit is seeking to enforce against it—even conceding (which I however deny) that Jessup and the St. Louis, Kansas City & Northern Railway Company were innocent purchasers.  My opinion is, that they were not innocent purchasers for the following reason:  The act of 1871 which authorized the assessment and levy of taxes on the property in question, was passed in March, 1871, five months before Jessup bought the property, his purchase having been made in August, 1871, and more than ten months before the St. Louis, Kansas City & Northern Railway Company purchased of Jessup, the said company having purchased of him in February, 1872, on the first day of which month under the act of 1871, it was made the duty of said company to make separate returns for each year it had neither been assessed nor taxed. Both of the said purchasers were then distinctly notified of the State's claim, and they are presumed to have known the state of the law concerning the identical property with which they were dealing and the liability of the property to assessment and taxation for the years it had not been either assessed or taxed.  Especially so, as the said act of 1868, which notified them that the property of the North Missouri Railroad Company would be taxed on its cash value, constituted the first link in the chain of title to Jessup and the St. Louis, Kansas City & Northern Railway Company to the property of the North Missouri Railroad Company. and without which they had no title.

And especially so, as the said act of 1871 gave an express lien for all taxes on said property till they were paid.

The case of *Heine v. Levee Commissioners*, 19 Wall. 655, has been invoked as an authority opposed to the views above expressed. It will be seen, upon an examination of the case, that it has nothing to do with the case in hand. One point of the case in judgment was whether the plaintiffs, who were owners of certain bonds issued by levee commissioners, had an equitable lien on the real and personal property of said parishes for the payment of said bonds, the levee commissioners who issued them having resigned without levying a tax for their payment. It was held that no such lien existed, and in the disposition of the question Justice Miller expressly declined to decide the question whether taxes lawfully levied are until paid a lien on the property against which they are assessed, and observed in that connection " that it was too clear for argument that taxes not assessed are no liens." Conceding this to be so, it is nevertheless true, according to the decisions of this court and authorities hereinbefore cited, when real property which has been omitted from assessment and taxation for past years is assessed and taxed for such omitted years, that the tax then becomes a lien superior to all others.

The objection made that the act of 1871, *supra*, is retrospective, and, therefore, unconstitutional, I think, is without force. A law which retrospects and looks back becomes obnoxious to the constitutional inhibition against the passage of retrospective laws, only when it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a disability in respect to transactions or considerations already past. The said act of 1871, though it looks to the past, does not interfere with any vested right, neither does it create a new obligation nor impose a new duty. It only seeks the performance of a duty theretofore imposed, and the enforcement of an obligation which theretofore rested on the company. Stripping the case of all redundant and

irrelevant matter, and the sole question presented is : Can the property of a railroad which was liable to assessment and taxation from the years 1862 to 1871 inclusive, which had escaped taxation during that period by reason of its not having been assessed nor taxed upon its value as ascertained by its capital stock, or upon its cash value as other real and personal property, be subjected to the payment of taxes for the omitted years?

For the reasons herein given my opinion is that it can, and that the judgment of the court of appeals reversing that of the circuit court ought to be affirmed.

### On Motion for Rehearing.

HENRY, J.—We have carefully examined the cases cited by counsel in their brief on the motion for a rehearing, and shall notice particularly that of the *Pacific R. R. Co. v. Cass Co.*, 53 Mo. 17, which bears a stronger resemblance to the case at bar, than any of the others to which our attention has been called. The distinction between that and this case is palpable. By the act of December 25th, 1852, the property of the Pacific Railroad Company was not only subject to taxation, but a special mode for its assessment was provided, differing from that provided by the general law. Instead of the shares of the capital stock, the property, as contradistinguished from the stock, was alone taxable, and the president of the company was required, on the 1st of February in each year, to furnish to the State Auditor a sworn statement of the actual value of the property of the road, and on that basis the assessment was made. The section of that act providing that after the Pacific and Southwestern Branch should be completed, opened and in operation, and have declared a dividend, the property of the company should be subject to taxation at the actual cash value, at the same rate assessed by the State on other property of like value, was not self-enforcing while the general law remained in force, under

which the shares of the capital stock of all corporations were taxed for State purposes. Hence, it was followed by a provision which prescribed a different mode of taxing the Pacific Railroad Company from that which applied to corporations generally.

A similar provision in the act amendatory of the North Missouri Railroad charter, declared, that its property should be subject to taxation, as such, but it was not followed, as in the case of the Pacific Railroad Company, with a section prescribing a mode of assessing the property, but the general law, by which the shares of its capital stock were taxed, was left in force. The only effect of the provision was to take the property out of the operation of a previous act, which had declared all the property of that company personal property, and vested it in the holders of the capital stock, in proportion to their respective shares.

The principal question in the *Pacific R. R. Co. v. Cass Co.*, was whether the company was exempt from taxation for county purposes, and the court held it was not; that the property being taxable for State purposes, the counties through which the road ran had a right to levy taxes for county purposes on such of the property as lay within the counties respectively. The county, by express provision of the statute, can levy taxes only on such property as is taxable for State purposes, and it would certainly not be contended that Cass county could have levied taxes upon the shares of the capital stock of the Pacific Railroad Company under the act of 1852. And the position is equally untenable, that St. Charles county, while the general statute remained in force and applicable to the North Missouri Railroad Company, could levy taxes upon the property, as contradistinguished from the shares of the capital stock, of the North Missouri Railroad Company; the State having taxed the shares of its capital stock and not the property. While counties are confined to the same objects of taxation that are taxed by the State, it does not follow that they can levy their taxes in the same manner

only.   While the act of 1852 in relation to the Pacific
Railroad Company, provided a mode for levying State taxes
on its property which could not be resorted to by the coun-
ties through which its road ran, yet they could levy their
taxes upon it in the manner provided by the revenue law
for the assessment of other real and personal property.   So
with regard to the North Missouri Railroad Company, each
share-holder was liable to be assessed in the county in
which he resided on the shares of the stock of that cor-
poration owned by him.   We see no reason for receding
from or modifying the opinion heretofore delivered in
this cause.   All concur, except NORTON, J.

HOUGH, C. J.—By the 6th section of the act of Janu-
ary 7th, 1853, amending the charter of the North Missouri
Railroad Company, it was declared that all the property
of said company should be deemed to be personal estate.
The act of March 17th, 1868, changed the artificial char-
acter given to the property of said company by its amended
charter to its natural and real character.   After the pass-
age and acceptance by the company of the act of 1868,
the legislature had its election either to tax specifically the
lands, lots, depots, etc., and other property of the com-
pany, or to tax the capital stock of the company in the
hands of the share-holders, as representing such property.
The law-making power of the State by failing to amend
the revenue law, which provided for taxing the shares of
stock of all banks and other corporations, elected to con-
tinue the taxation of defendant, the North Missouri Rail-
road Company, by an assessment of its shares of stock.
The act of 1868 was not intended to be, and did not operate
as, an amendment of the general revenue law, and the
assessor would have had no right under the general reve-
nue law to assess for county purposes any other property
than that which was assessable for State purposes, and
the property so assessable for State purposes was the
stock of the company, and not the lands, depots and other

property *in specie*. The property of the company, there-fore, while subject to taxation *in specie* under the constitu-tion of 1865, and the act of 1868, was not, in fact, subjected to taxation, but the shares of stock as representing such property were subjected to taxation. Under the act of March 10th, 1871, the State and counties had no right to assess back taxes against any property of the company save such as had prior to that time been subjected to taxa-tion and had not been assessed and paid taxes. It was the stock of the North Missouri Railroad Company, only, and not its lands and other property *in specie*, which had been subjected to taxation and had escaped taxation. Persons buying the stock of the North Missouri Railroad Company would have taken it subject to taxation under the act of 1871, but those buying the property itself, did not take it subject to the levy of any back tax against it, *in specie*, under said act; as the property of the company, *in specie*, had never been subjected to taxation. I am, therefore, of opinion that the motion for rehearing should be overruled. SHERWOOD, J., concurs in the view here presented.